Good morning, Your Honors. Good morning. My name is Jane Oak, and I represent the petitioner, Mr. Jong Min Kim. May it please the Court. Mr. Jong Min Kim is a 35-year-old Korean citizen from South Korea who came with his parents at the age of seven. He is the sole caretaker for his parents. Counsel, we've read the briefs, and you don't have very much time, but I promise we've read them. Could you go to the legal issue here? If I could interrupt, and forgive me, but I'm just anxious to get to this. And I think the only issue really is we're reviewing just the denial of the motion to reopen? That's correct. Okay, and what's the standard there? The standard is that the petitioner must show that he has met the burden of that there was prejudice that the BIA erred in abusing its discretion, and that because he did not have a chance to present any evidence toward the vacating of his conviction, that he was then violated, his due process rights were violated. Okay, so he's removable, if I could? I want you to just correct me, and I'm sure opposing counsels, you're invited to do the same. But I think if I've got this right, he's removable because he overstayed his visa. They're not. Some of the cases that you cited are a bit in opposite, but he's removable because he overstayed his visa. He applied for cancellation and was denied, but I think he had additional evidence that he had, that he filed only at the BIA level when he appealed the denial of the motion to reopen, and that's specifically the motion that he filed in the Superior Court. Is that right? That is correct. Okay, so what is your strongest argument that the BIA abused its discretion? Well, the BIA, when they looked at the record... Excuse me, or are you arguing that the IJ abused it? The IJ, the IJ... By not reopening, even though the IJ didn't have the motion. Is that it? Correct. Okay. So the IJ, when he saw that it was vacated under 1385 nunc pro tonc, that there was evidence that it was legally invalid, and so... And what is the evidence that it was a Prop 64 dismissal or that it was a 1385 dismissal? What's the legally invalid nature of Mr. Kim's conviction? Yes, I was informed by post-conviction counsel that the basis for that was ineffective assistance of counsel. Where is that in any of the documents presented to the IJ, to the BIA, or even in the appeal documents before this court? Yes, so there were issues with communication with post-conviction counsel, and there was an oral motion and then stipulation, and then a lot of that wasn't obtained because of her circumstances, and also that we were not able to present that in time for the appeal. Well, look at the petition for resentencing under Prop 64 dismissal pursuant to 1385 nunc pro tonc. This is what Mr. Kim filed in the Superior Court to get the dismissal. There's no reference at all to ineffective assistance of counsel in that document. Yes. That couldn't have been the basis for the Superior Court's dismissal, right? Because it wasn't before the Superior Court when the court dismissed the According to post-conviction counsel, it was part of the basis, and then we've not been able to obtain proof of that. And also, subsequent to that, I finally communicated with her, and there is a Ninth Circuit case that declares that... I'm sorry, can we go back? Let's look at the petition. Can you point me to where in this document that the Superior Court relied on to dismiss the conviction? It mentions ineffective assistance of counsel. It does not show that in the record. So isn't that the end of the matter, then, if it's not shown that the court relied on the ineffective assistance of counsel to dismiss the conviction? It is, although I have found in Ninth Circuit case law that the Ninth Circuit has held that when there is an H&S 11359 situation, if the person has not been advised of those consequences as being an aggravated felony, that that is by law ineffective assistance of counsel, and that's... So now you're not relying on the dismissal of the conviction. You're relying on a lack of notice of the consequences? Well, in effect, the consequences were not informed by the Criminal Defense Counsel. Was that the argument made in your brief? No. But I think the argument made in your brief is that under Pickering, the conviction that is vacated is only without immigration consequences if it is solely vacated, right, for a purpose that is non-rehabilitative. Correct. And there's this sort of gesturing at that notion. So the IJ had before the IJ the docket sheet, what I'm going to call the docket sheet, that didn't really say very much. I just noticed that the BIA also had the motion, and Judge Koh just asked you about the motion, the petition that sought to have the conviction vacated in the first place. What I don't see is that the BIA addressed that or grappled with that motion anywhere in its order. Correct. And I'll just... This is for the benefit of opposing counsel as well. I think there are instances where we have remanded where the evidence hasn't been acknowledged, and I do have a bit of a question there. I don't think you're disputing that if this were reopened, your client is the one that has the burden of proof to show that he's eligible for cancellation of removal. Is that right? Correct. And I'm just curious, what in the motion should the BIA have grappled with? What is it in the motion that the BIA should have addressed? Well, the BIA does have a responsibility to review the entire record, right, and also... But what issue did the motion raise that the BIA did not address? That there was possibly ineffective assistance of counsel, and that the government also did not also meet their burden of responding to that motion. But Judge Koh asked you where in the motion was there a reference to ineffective assistance of counsel, and you admitted that there was not a reference to ineffective assistance of counsel. So that's why I'm curious as to what in the motion should have been addressed by the BIA that was not addressed by the BIA in its denial. The motion was talking about the NUNC protunque as being legally and procedurally invalid, as though that is what it's implying with the NUNC protunque being not just 1385. So I see that you did raise that in your argument to us. I think it might be in your reply brief. But it's in your briefing to us, and so I looked... And what I can see, the best I can see is that ER 279, where the petition that Judge Rollinson is asking about right now says, further, Proposition 64 added Health and Safety Code Section 11361.8 to the code, which stated that the prior marijuana convictions for relief are now legally invalid, quote unquote, despite what Prado decided. Therefore, Mr. Kim's dismissal in the furtherance of justice is not only for a rehabilitative purpose, but also has a legally defective basis. I don't see anything about ineffective assistance of counsel. This is as close as I think it comes to leaving a question on my mind about the reason for the NUNC protunque or what the judge meant by NUNC protunque. Is there anything else that we're missing? Other than just that the Ninth Circuit has held that the defense counsel, if they failed to advise them that they could have pled up to 11360, which is a non-aggravated felony, that is by law an ineffective assistance of counsel. Okay, so I think Judge Kohler, one of my colleagues just asked you about that. That is not here. I don't see that anywhere. Am I missing it? Would it be possible to supplement? Well, I just want you to answer my question. I don't see that anywhere. Is that anywhere in the briefing? There's nothing. Okay, that's all I need. Can I ask you two questions? The first one is the statute is pretty clear that for relief from removal, it's the individual who bears the burden to prove eligibility. So I was a little bit confused with so many of the cases that you cited are cases regarding the burden of proof for the government. But where an individual's requesting relief from removal, you would agree the statute provides that the burden is on the individual seeking the relief, in which it would be Mr. Kim in this case. Yes. If the burden is on him, he only needs to show that it was not solely for rehabilitative or immigration purposes. That's Pickering. Yes. Right. But we're at just trying to review the motion to reopen. And at that stage, you have the burden, right? And you have this baked-in burden of showing that there's basically, and this is my paraphrase, a colorable claim there, right? So under Pickering, you have to make what I'm going to call a colorable claim that the conviction was not only or solely vacated for a rehabilitative purpose. What's your best, your strongest evidence in the record that the conviction was not solely for a rehabilitative purpose? Cite us to the record. In the record, there's nothing specific on that. But just the aspect of it being non-pro-tunk is the... So your argument is that because the order dismissing the conviction was non-pro-tunk, that means that it was for a reason other than rehabilitative purposes? Yes. It was referring to a legal or procedural default. What's your strongest California case to support that proposition? For the non-pro-tunk argument, I don't have any specific case for that. But again, I just would like to mention that this circuit has talked about this particular code section, H&S 11359, as with the counsel did not actually advise them of the fact that it would be an aggravated felony and could have pled up to 11360, that it is ineffective assistance of counsel by law. Can I ask one last question? Of course. You raised the issue that you don't believe that the BIA has reviewed or did review the record. Isn't there a presumption that the BIA does and did review the record here? And how do you overcome that presumption in this case? From post-conviction counsel, we have been informed of the basis of it being ineffective assistance of counsel, but there was nothing put into the record, which I think by law makes her having committed ineffective assistance of counsel. But yes, that is correct. There's nothing there, but then I do see that the BIA could have asked for further evidence or review to give us time to produce that record. All right. Thank you, counsel. There are no further questions. We'll hear from the government. Counsel, you exceeded your time, but we will give you a minute for rebuttal. Good morning from Washington, Your Honors. May it please the court, Alexander Luce for the government. There's a lot to unpack during that presentation, both from petitioner's counsel and from the panel, so I'm just going to try to respond to everything I heard that seemed to call out for a response, and if I miss anything, please interrupt me at any time, of course. So the first question I heard, I think, was from Judge the motion that was submitted for the first time on appeal that had been filed in the trial court to procure this non-pro-tunk dismissal. Well, not quite. I was just making the observation, counsel, that there is a piece of evidence that's new, filed before the board, and it's a motion to reopen, and so typically we'd look to see is there anything new or different? What's the reason it couldn't have been filed earlier? But the IJ didn't even have it, so my question really went to there is case law where we have sent something back where the board hasn't engaged and acknowledged evidence filed for the first time, and I just wanted to get your response on that. Absolutely, Your Honor. Thank you for clarifying. So I make a couple of points. First, there's a procedural posture here that I think pretty squarely addresses your question. Some of the cases I think Your Honor is referring to have to do with motions for before the board of immigration appeals. That's the fact pattern this court usually sees in motion to reopen cases. But in this case, the motion to reopen was filed, as Your Honor points out, before the immigration court, and the board was hearing an appeal. When the board exercises its appellate jurisdiction, it has to review the record before the immigration judge. Just like any appellate panel, it doesn't create a record on appeal. It reviews on appeal the record developed at a trial. So even if the board had concretely said, we're not going to look at this, that would have been correct. That would have been in balance. So that's a long way of saying no, right? My question is no, there's not error there, right? There is not error, yes. And the second point I'd make, Your Honor, is I think even where this court has sent cases back for failure to consider the record, as Judge Koch pointed out, there's a presumption that the agency does fully consider the record, and that would be rebutted if there was a piece of evidence that cried out for attention and that hadn't, you know, the language of the agency's decisions suggested it really had been overlooked. But here the piece of evidence in question really strongly supports the conclusion the agency already reached. The agency said, we don't have anything in the record here that shows there was a substantive or procedural defect in this conviction such that its vacater would change Mr. Kim's immigration prospects. And indeed, the motion he filed in the trial court and then submitted to the Board of Immigration Appeals in his administrative appeal shows there wasn't a substantive procedural defect. If there was one, he could have just said what it was. You know, now we're hearing today about ineffective assistance of counsel. Certainly that, in theory, could constitute a substantive or procedural defect in a conviction. But Your Honors and I are all hearing about that for the first time right now. That's never been raised to the trial court that granted the order, to the agency whose decisions are on review today, to this court and any of the papers that have been filed up to this point. So again, where the motion that actually procured this trial court order doesn't even identify a substantive or procedural defect and squarely prays for amelioration of the immigration consequences, you know, that motion really supports the conclusion the immigration judge reached and the board reached an affirmance on appeal. Let's see what other cases or points were raised. I noted from opposing counsel an argument that no pro tonk inherently suggests that the trial courts were arrested on a substantive or procedural error. I point out that in the opening brief, that argument wasn't raised. And I think in a footnote in our answering brief, we noted that it had been waived. And the reason I knew when I wrote the answering brief to point that out was because prior to briefing, the government filed a motion for summary disposition in this case. And there was a response and a reply and actually a sur response to that. And in those papers, I'm sorry to interrupt. Can I ask you a different question? Did the BIA error because they didn't use the language whether a conviction was vacated for reasons solely unrelated to the merits versus rehabilitation or immigration? They left out the word solely. Is that error in the BIA's decision? And if so, what should we do about that? Well, it's not error. So the court should deny the petition for review. That language really would, I guess, make a difference in a scenario. This case doesn't present. If there had been some evidence to suggest that the trial court had vacated, why is it not error to get that? Why is it not error to get the standard wrong? You agree that that is an error not to have the word solely in there, correct? No, I don't, Your Honor. No, I don't. I don't think the law is drawing that fine of a distinction. Hold on. So the question is, is Pickering still good law? Yes. Well then, can you circle back to Judge Crow's question about is this the correct statement of standard or not? It is the correct statement of standard, yes. And the point I'm on the way to making here is that the word solely has no work to do in this case. There's no evidence in the record at all of a substantive or procedural defect in the conviction. There's no evidence of any motive at all by the trial court to vacate the conviction on that basis. I guess if there had been some evidence, we might have to weigh which were the predominant reason, but there's no evidence at all of that anywhere. Instead, we have uniform evidence over and over again showing a rehabilitative and ameliorative purpose. The original vacator. Counsel, counsel. Sure. If I could interrupt. If you could go to ER 279, the BIA had that petition that my because the, you know, Prop 64 was, I think, very clearly the original impetus. And then after Credo came out, there was this reference. And we have, it is kind of a cryptic docket entry, but the second one refers to a different legal basis. And there's this allegation that the second, you know, the Nuck Pro Tunk order, right, refers to a conviction that is now legally invalid. Is there California law on this point? Is it, was this something that BIA needed to address? No, Your Honor. It was not something the BIA needed to address. The board said in its decision, I think, that Nuck Pro Tunk just means that an order has retroactive effect. And it doesn't tell us anything about the basis for entering the order. I know, but it doesn't just hang on. Forgive me for interrupting again, but this is a little hard to do with a time delay. Forgive me. But it does say a little bit more than that. It doesn't just say Nuck Pro Tunk, right? There's this indication from a superior court judge in California saying that the first docket entry didn't reflect his intention. Mistakenly reflects the court's intention. Is that the kind of thing that should have jumped out to the BIA, where you, you know, in answer to my question, you said the BIA doesn't have to talk about the petition that was filed in the superior court because it wasn't in front of the IJ. In response to Judge Coe, you said if there's something really new and different, they have an obligation to acknowledge it. So where are we on that spectrum here? Well, again, if there was really something new and different in a motion to reopen filed before the board in the first instance, the board would have a duty to talk about it here because there was something filed in an administrative appeal. The board was totally within bounds not to look at it at all if it wanted to, because it can't make a record on appeal. It reviews the IJ decision based on the record that was before the IJ. So again, there's no error by the board in failing to look at anything here, in part just because of the posture of this case. But more to your point, Judge Crispin, about the language in the trial court's order, I think I agree with you that there's a little bit of a cryptic nature here in the sequence of the trial court's orders. But in parsing through this case a few times over the last month, my best read is that what happened is that in 2017, we see that in the docket sheet at 553 and 554 of the record. In 2017, the petitioner moved the trial court to vacate his conviction under Prop 64, which this court has squarely held in Prado to be rehabilitative. So that doesn't change his immigration prospects. Then in 2019, there's an entry that says Prop 64 Petition Rehearing Set for October 24th, 2019. And then at October 24th, 2019, at that hearing, that's where we get the Nunk-Pro-Tunk order in question here. And I think what that pretty clearly shows is that there's two different post-conviction orders. Yes, Judge Crispin? Hold on. Could I back you up? Forgive me for interrupting. But I think that Nunk-Pro-Tunk comes on November 25th. Okay. I'm seeing an entry at 553 and 554 on October 24th. I know there is a November entry, and I agree these records could certainly be clearer. But the overall point I want to make here in the 30 seconds I have left is that the original... And that said, the original documents reflecting the conviction in this case didn't speak the truth. That might support Mr. Kim's position here, but he still would have to just say what the substantive and procedural defect is. That's such a low bar and he hasn't done it. But instead, what we have here is two post-conviction orders, one that was clearly rehabilitative, and then a second one saying, my previous order, the California trial judge, my previous order doesn't reflect the record. That's referring to the first post-conviction motion, the first post-conviction order. And if we look at the motion that he got that second order with, we know that's the case because he was looking for a workaround to get around Prado to effectuate the first post-conviction order based on Prop 64. So that's what he was saying didn't speak the truth. Is there any further questions? Yes. I want to ask you, is it fair to say that the board's oversight in neglecting to include the word solely is simply an oversight where there's no indication that it actually applied the incorrect standard? Yeah, Your Honor, I think that's right. I would go so far as to say it's not even an oversight, but even if the court were to look at it that way and say that word is important here, under this fact pattern, it has no work to do. There's zero evidence of substantive procedural defect, overwhelming evidence of ameliorative and rehabilitative vacar. Solely just doesn't come into play. Is there any evidence in the record, though, that the board applied an incorrect standard? No, there isn't, Your Honor. There's evidence in the record that it applied the correct one. It cited the cases laying out that standard and looked at the evidence that was before the immigration judge. And furthermore, just one final point in closing, as Your Honor pointed out during the petitioner's time, he had the burden of proof at the motion to reopen stage in two different ways. So if the court's not sure what happened here, just like the immigration court and the board weren't sure what happened at the trial court level, unfortunately, Mr. Kim loses because he had the burden of proof under multiple authorities. Can I ask you one last question on that point? On NAF v. Gonzalez, the court said that the government had the burden, but it was in the context of a motion to reopen. So how do you reconcile the relative burdens in that context? Because it was a motion to reopen. Sure, Your Honor. Thanks for bringing that up. So as you pointed out just now and during petitioner's presentation, that had to do with removability, not relief. The Supreme Court's recent opinion in Paredes tells us that makes all the difference in the world. But furthermore, NAF relied on a line of cases that Mr. Kim also cites here, Cardozo-Tlaseca, Estrada-Rosales. Those cases all not only had to do with removability as opposed to relief, as Your Honor, Judge Koh touched on, but also those cases arose in the context of a unique regulation called the departure bar. And I need to explain just briefly what that regulation says to understand why it's distinguishable. That regulation says that the agency has no jurisdiction to grant to consider a motion to reopen that's filed on the buyer on behalf of someone who has departed the country pursuant to a lawfully executed removal order. Well, I still don't hear an answer to how do you explain NAF in the context of a motion to reopen. I'm sorry, Your Honor. That's what I'm trying to do. Let me rephrase and try to make it more concise. The bottom line is, number one, that had to do with removability, not relief, so the government bore the burden of proof there. And number two, like I'm saying, it had to do with the departure bar, which is a regulation that requires a unique inquiry that's not at issue here. The departure bar— Counsel, is it fair to say that NAF puts the burden on the government only if the conviction is the basis for removal? Yes, Your Honor, and even then only in a subset of such cases, but Your Honor is absolutely correct. All right. Thank you, Counsel. If there are no further questions, we'll go to rebuttal. Thank you, Your Honor. So as we were talking about NAF, there is this understanding that if it's the basis of removal, then NAF would say the burden is on the government. Here, yes, it was for failure to maintain status. However, it just doesn't seem like within the government, the burden would be on the government. Why doesn't it make a difference, Counsel? In one instance, the government is seeking to remove the person from the country, so the government is the actor. In the other scenario, the petitioner is seeking to remain in the country despite an order of removal, so it's taking the affirmative action. So why does that make the distinction that explains the rule? So, Your Honor, I think that it just seems that it would be an unfair thing to the defendant in that the standard shifts just for that, and I... Why is it unfair to the defendant to have the burden of proving he's... Seeking cancellation. Yes. He's seeking cancellation. So he has the burden, and if we're missing something, now is the time. Yeah, if he's seeking cancellation, he has the burden to just show that it was not solely for those purposes, and I think here the government didn't bear that burden. But it's not the government's burden. That's the difficulty I'm having with your argument. You keep saying the government didn't bear its burden, but the government didn't have the burden. You have the burden to show... Your client had the burden to show that there was another reason, right? And as I indicated, there's one sentence in the petition filed in the Superior Court that asserts that there was another reason. Today, we're hearing about IAC for failure to advise about the immigration consequences. What we're looking at sounds to me like all three of us will look really hard at this record to see whether you've raised before the IJ or even before the BIA another reason that would be a reason that this case should have been reopened. Yes. The only thing I can say is that post-conviction counsel does have a stipulation that can be presented to indicate that it was ineffective assistance. Counsel, if we agree that the burden was on your client in this case, if you concede that the burden was on your client, do you lose? We don't. Why not? I still believe that he has carried his burden from the non-protonc and the record that there was legal invalidity. Right there, when you say legal invalidity, you've made that assertion in the petition. So where does that phrase come from, legal invalidity? Does it come from the statute, the California statute? Well, there is a statute under Prop 64 that you can actually declare it as legally invalid as well. But I don't know if that's what the post-conviction counsel had specifically cited. Right. Okay. Thank you. Can I just follow up on Judge Rawlinson's question? So you concede in your opening brief that based on the documents that were before the lower courts, it's not clear. I mean, you say the government has not met its burden to show that there was a procedural or a substantive defect that caused the conviction to be vacated. So if you've already conceded that the record below doesn't establish that, then I don't understand why, if you have the burden, we shouldn't affirm here. If you have the burden and you concede in your opening briefing that the record doesn't establish a substantive or procedural defect, then why shouldn't we affirm? Because I believe that the court should have inquired further based on the nunc pro tunc and what was stated in the record by the Superior Court judge. So I just end the law under Bautista, saying that it is, by law, ineffective assistance of counsel when they are convicted of 11-359, and it could have been pled up to 11-360. All right. Thank you, counsel. If there are no further questions, the case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, KOH